# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 20-604V
UNPUBLISHED

| | |
|---|---|
| TRACI GOULD MILLER,<br><br>     Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>     Respondent. | Chief Special Master Corcoran<br><br>Filed: July 22, 2022<br><br>Special Processing Unit (SPU);<br>Entitlement to Compensation; Table<br>Injury; Decision Awarding Damages;<br>Pain and Suffering; Influenza (Flu)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*David John Carney*, Green & Schafle, LLC, Philadelphia, PA, for Petitioner.

*Matthew Murphy*, U.S. Department of Justice, Washington, DC, for Respondent.

### RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES[1]

On May 14, 2020, Traci Gould Miller filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that she suffered a Shoulder Injury Related to Vaccine Administration ("SIRVA") as a result of an influenza ("flu") vaccine administered to her on September 17, 2019. Petition, ECF No. 3. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

For the reasons described below, and after holding a brief hearing on entitlement and damages in this matter, I find that Petitioner is entitled compensation, and I award

---

[1] Although I have not formally designated this Decision for publication, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002, because it contains a reasoned explanation for my determination. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

damages in the total amount of **$75,000.00 representing Petitioner's actual pain and suffering.**

I.     **Relevant Procedural History**

As noted above, this case was initiated in May 2020. On November 12, 2021, after attempting to resolve this case informally, Petitioner filed a status report stating that the parties had reached an impasse. ECF No. 28. The parties requested that I issue a scheduling order setting deadlines for the filing of briefs, and I did so. ECF No. 30.[3]

On December 1, 2021, Petitioner filed a Motion for Ruling on Record and Brief in support of Damages, arguing that she had established entitlement to compensation for her SIRVA injury, and requesting an award of $85,000.00 for her pain and suffering as the sole damages component. ECF No. 31. Petitioner specifically asserted that the evidence in the record preponderantly established that she had received a vaccine in her left shoulder on September 17, 2019, that her shoulder injury began within 48 hours of receiving the vaccine, and that she was therefore entitled to compensation. *Id.* at 1-2, 25.

Respondent filed a combined Rule 4(c) Report and Response to Petitioner's Motion on February 16, 2022, recommending that entitlement to compensation be denied under the terms of the Vaccine Act. ECF No. 33. Respondent argued that the evidence preponderated against a finding that the onset of Petitioner's shoulder pain occurred within 48 hours of her vaccination as required to establish an on-Table SIRVA claim. *Id.* at 7. Petitioner filed her Reply on March 2, 2022. ECF No. 34.

On April 4, 2022, I held a status conference and indicted that based upon my preliminary review it appeared Petitioner could likely establish Table SIRVA onset. ECF No. 35. I therefore ordered Respondent to brief the issue of damages. *Id.* Respondent filed a brief on damages on May 4, 2022, recommending that in the event that I found Petitioner entitled compensation, I award the lessor amount of $67,500.00 for past pain and suffering. ECF No. 36. Petitioner filed a further Reply on May 17, 2022. ECF No. 40.

In May of this year, I proposed this case be set for an expedited "Motions Day" hearing on June 24, 2022[4], at which time I would decide the disputed issues based on all evidence filed to date and any oral argument from counsel. ECF No. 37. The parties agreed. ECF No. 38. The Motions Day hearing took place on July 8, 2022. Minute Entry

---

[3] Initially, I directed the parties to brief only the issue of entitlement. ECF No. 30.

[4] The hearing was subsequently rescheduled and heard on July 8, 2022.

dated July 18, 2022.[5] I orally ruled on Petitioner's entitlement to compensation, and after argument, I made an oral damages determination as well. This Decision memorializes those findings/determinations.

## II.     Factual Findings and Ruling on Entitlement

### A. Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding his claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Hum. Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Hum. Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Hum. Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[6] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

---

[5] David Carney appeared on behalf of Petitioner, and Matthew Murphy appeared on behalf of Respondent. The transcript of the July 8, 2022 Hearing in this case was not filed as of the date of this Decision, but my oral ruling is incorporated by reference herein.

[6] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

### B. Factual Finding Regarding QAI Criteria for Table SIRVA

The only Table requirement for SIRVA that Respondent contests is whether Petitioner's first post-vaccination symptom or manifestation of onset (specifically pain)

4

occurred within 48 hours as set forth in the Vaccine Injury Table and Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA. 42 C.F.R. § 100.3(a)(XIV)(B) (seasonal influenza vaccines); 42 C.F.R. § 100.3(c)(10)(ii) (required onset for pain listed in the QAI); ECF No. 33 at 7. Based upon a review of the entire record, and for the reasons set forth below, I find that it more likely than not was.

Petitioner received a flu vaccination in her left deltoid on September 17, 2019. Ex. 1 at 31. A little more than two months (or approximately 71 days) later, on November 27, 2019, Petitioner presented to orthopedist, Sunny Gupta, MD. Ex. 4 at 6. She reported that her "[s]ymtoms started back in early September. She had a flu shot and noticed pain in her shoulder afterward. It ha[d] been bothersome ever since." Ex. 4 at 6. Dr. Gupta's notes indicate "[t]his could be an inflammatory reaction from the flu shot." *Id.* at 7. Petitioner's subsequent treatment records continue to describe the onset of her shoulder pain as closely following in time her vaccination. Ex. 5 at 7 (January 23, 2020: "[S]ince September 2019 she has been experiencing pain related to a flu shot);" Ex. 6 at 9 (February 3, 2020: "Started with L[eft] shoulder pain in September . . . . " and "Mechanism of Injury: Patient's symptoms initiated after a flu shot she received in September.)"

Respondent asserts that Petitioner's "medical records created more than two months after vaccination contain only vague phrases that fail to establish that the pain in [P]etitioner's left shoulder began within 48 hours after vaccination." ECF No. 33 at 7. I find, however, that the medical records cited above, as supported by Petitioner's sworn affidavit (Ex. 2), preponderately support the conclusion that the onset of her shoulder pain likely began within 48 hours of her September 17, 2019 flu vaccination. While I acknowledge that Petitioner's first relevant medical record indicates her pain began in early September, while her vaccination was in mid-September, that record, and subsequent records, clarify that she reported the start of her shoulder pain *after* her September vaccination, and that it was bothersome thereon. Ex. 4 at 6; Ex. 5 ay 7; Ex. 6 at 9. My finding herein is consistent with the intent of the Act that awards are to be "made to vaccine-injured persons quickly, easily, and with certainty and generosity.'" H.R. Rep. No. 99–908, 3, 99th Cong., 2d Sess. 18, *reprinted in* 1986 U.S.C.C.A.N. 6344.

I credit Respondent's arguments about the vagueness of certain records pertaining to onset in this case, but note that the Program's evidentiary standards are nevertheless satisfied under the circumstances. As I have previously observed, "the Vaccine Act clearly does *not* require that symptoms be recorded within a specific timeframe to be preponderantly established. Rather, it requires only that onset *occurs* in the relevant timeframe." *Niemi v. Sec'y of Health & Hum. Servs.,* No. 19-1535V, 2021 WL 4146940, at *4 (Fed. Cl. Aug. 10, 2021) (citing Section 13) (emphasis in original). Neither does the Act require that the medical records document an exact date that the onset of a petitioner's shoulder pain began. A special master may thus find that the first symptom or

manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2).

Accordingly, this element of the claim has been met.

### C. Other Requirements for Entitlement

Based on the above, I find that Petitioner has satisfied all requirements for a Table SIRVA and is entitled to a presumption of causation. However, even if a petitioner has satisfied the requirements of a Table injury or established causation-in-fact, he or she must also provide preponderant evidence of the additional requirements of Section 11(c), i.e., receipt of a covered vaccine, residual effects of injury lasting six months, etc. *See generally* § 11(c)(1)(A)(B)(D)(E). But those elements are established or undisputed in this claim. I therefore find that Petitioner is entitled to compensation in this case.

### D. Damages

#### a. The Parties' Arguments

Citing four[7] prior damages determinations, Petitioner requests $85,000.00 in pain and suffering. ECF No. 31 at 1, 18-20. She asserts that her course of treatment (including three cortisone injections, an MRI, trigger point injections, and two rounds of physical therapy for a total of approximately 25 sessions), is comparable to the aforementioned non-surgical SIRVA cases and warrants an award at that level. *See id*. at 21-25. In particular, at the July 8, 2022 hearing, Petitioner argued that her case is most similar to the *Kent* claim, but more severe, thus justifying a higher award. Petitioner also emphasizes that that she endured pain and suffering for nearly three years, that she still suffers from shoulder pain, and that her injury has taken a "physical and emotional toll on her well-being." ECF No. 40 at 10-11; Ex. 12 at 1-2.

---

[7] *Kent v. Sec'y of Health & Hum. Servs.*, No. 17-0073V, 2019 WL 5579493 (Fed. Cl. Spec. Mstr. Aug. 7, 2019) (awarding $80,000.00 for actual pain and suffering); *Weber v. Sec'y of Health & Hum. Servs.*, No. 17-0399V, 2019 WL 2521540 (Fed. Cl. Spec. Mstr. Apr. 9, 2019) (awarding $85,000.00 for actual pain and suffering); *Young v. Sec'y of Health & Hum. Servs.*, No. 15-1241V, 2019 WL 396981 (Fed. Cl. Spec. Mstr. Jan. 4, 2019) (awarding $100,000.00 for actual pain and suffering); and *Dhanoa v. Sec'y of Health & Hum. Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018) (awarding $85,000.00 for actual pain and suffering).

Respondent, by contrast, proposes an award of no more than $67,500.00 for Petitioner's pain and suffering. ECF No. 36 at 1, 8. He argues that "the medical records establish that [P]etitioner's SIRVA was not severe, required only conservative treatment, and to the extent it has not resolved, is only mildly limiting at present." Id. at 7. Respondent cites to two cases in particular – *Dagen v. Sec'y of Health & Hum. Servs.*, No. 18-0442V, 2019 WL 7187335 (Fed. Cl. Spec. Mstr. Nov. 6, 2019) (awarding $65,000.00 for actual pain and suffering) and *Knauss v. Sec'y of Health & Hum. Servs.*, No. 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018) (awarding $60,000.00 for actual pain and suffering). During oral argument, Respondent asserted that the duration of Petitioner's injury was only approximately six months,[8] and thus the best comparable was the *Dagen* case with a similar duration of the injury.

### b. Legal Standards for Damages Awards

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections II and III of *Winkle v. Sec'y Health & Hum. Servs.*, No. 20-0485V, 2022 WL 221643, at *2-4 (Fed. Cl. Spec. Mstr. Jan. 11, 2022).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[9]

### c. Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her

---

[8] Respondent was apparently utilizing the date Petitioner first *treated* for her shoulder injury, November 27, 2019, and the date of Petitioner's June 16, 2020 physical therapy to calculate this time period. However, I find that the onset of Petitioner's injury began contemporaneous with her vaccination and persisted beyond her last physical therapy on February 16, 2021 – although I do find, as discussed later, that at that time she was substantially recovered.

[9] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.*, No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, but not limited to: Petitioner's medical records, affidavits, filings, and all assertions made by the parties in written documents and at the expedited hearing held on July 8, 2022. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

Pursuant to my oral ruling on July 8, 2022 (which is fully adopted herein), **I find that $75,000.00 represents a fair and appropriate amount of compensation for Petitioner's pain and suffering.**

One factor immediately relevant to my determination is Petitioner's treatment delay. Petitioner alleges that her pain was severe immediately, but she did not obtain treatment until November 27, 2019, over two months after September 17, 2019 vaccination. While I find that such a delay is reasonable (and not reason to deny entitlement), the delay in seeking treatment is indicative that Petitioner's shoulder pain was not so severe as to necessitate urgent treatment in the days and weeks immediately after her vaccination.

Thereafter, Petitioner underwent consistent, albeit conservative, treatment for her relatively mild to moderate injury until June 16, 2020, including: physical therapy,[10] three steroid and trigger point injections,[11] and an MRI scan.[12] Subsequently, there is approximately a seven-month gap in Petitioner's treatment. On January 13, 2021, Petitioner returned to see her orthopedist, Dr. Lisko, for left shoulder pain. Dr. Lisko describes her treatment history and indicates that Petitioner "states that she is doing remarkably better." Ex. 10 at 4. Petitioner further indicates to Dr. Lisko that she "work[ed]

---

[10] Petitioner engaged in approximately 21 physical therapy sessions between February and June 2020. Ex. 6 at 9; Ex. 9 at 35.

[11] Petitioner received three steroid injections on the following dates: November 27, 2019 (Ex. 4 at 7), January 23, 2020, (Ex. 5 at 8-9), and February 12, 2020 (Ex. 5 at 5-6). Petitioner received trigger point injections on May 7, 2020. Ex. 11 at 4-5.

[12] Petitioner's MRI scan occurred on February 6, 2020. The MRI Impression indicated as follows:

> 1. Mild subscapularis tendinosis. No full-thickness rotator cuff tear.
> 2. Evidence for a sprain of the anterior band of the inferior glenohumeral ligament versus a sequela of adhesive capsulitis.
> 3. Blunted posterior glenoid labrum concerning for a chronic tear. Suspected intrasubstance degeneration of superior glenoid labrum.

Ex. 5 at 10-11.

8

out recently and felt a twinge in her left shoulder" and wanted "to be sure that it is ok to workout without hurting herself." *Id.* Dr. Lisko's examination found "[i]mproved but still decreased range of motion of the left shoulder." *Id.* Dr. Lisko's primary assessment was bursitis of the left shoulder, and while it was noted "there has been improvement," it was also found that Petitioner "had a minor setback with certain position" and recommended she resume physical therapy. *Id.* at 5. Subsequently, Petitioner engaged in a second round of physical therapy for a total of four additional sessions. Her last physical therapy appointment was on February 16, 2021, while some limitations persisted, Petitioner noted that "her shoulders feel good today" and sought no further treatment. Ex. 9 at 51. While Petitioner asserts that she continues to suffer from shoulder pain (Ex. 12), I find that she was substantially recovered at the time of her final physical therapy appointment on February 16, 2021, despite some residual limitations. Accordingly, no award for future pain and suffering has been demonstrated.

In sum, the record establishes that Petitioner was substantially recovered 17 months after her vaccination. This is not a six-month injury as Respondent alleges. However, as discussed, Petitioner delayed seeking treatment initially and subsequently had gaps in treatment, before aggravating her injury working out and seeking further treatment in January 2021.[13] The fact that Petitioner could cope with her injury during these periods of time counsels in favor of a lower pain and suffering award. Treatment gaps are a relevant consideration in determining the degree of Petitioner's pain and suffering.

In making my determination, I have fully considered Petitioner's sworn affidavits. However, I do not find any unique personal factors demonstrating severe pain and suffering (such as a pregnancy at the time of her injury). *See Desrosiers v. Sec'y of Health & Hum. Servs.*, No. 16-0224V, 2017 WL 5507804, (Fed. Cl. Sept. 19, 2017). The parties' comparable case citations were also reasonable, but not fully useful in helping me to calculate pain and suffering. I note that the cases cited by Petitioner are several years old (and were not decided by me either, although that fact is not of tremendous importance). More recent SPU SIRVA cases that I have decided benefit from a larger body of caselaw and a greater appreciation for the nature of SIRVA as an injury. However, Ms. Miller's injury was both more severe, and of a longer duration than that experienced in the cases cited by Respondent, justifying an increase on what was awarded in those cases.

---

[13] I find however that this event did not represent a new injury.

9

**E. Conclusion**

In light of all of the above, the I award **Petitioner a lump sum payment of 75,000.00 representing Petitioner's actual pain and suffering in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id*.

This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[14]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[14] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.